UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:

Mahmoud R. Rahim and
Raya H. Abdulhussain,

        Debtors/Appellants.

Case No.: 10-15123

Honorable Sean F. Cox

_____/

**OPINION & ORDER DENYING DEBTORS' MOTION TO STAY**

       This bankruptcy case is before the Court on Mahmoud Rahim's and Raya Abdulhussain's ("Appellants" or "Debtors") Emergency Motion to Stay the December 16, 2010 Order Granting "Creditors' Motions to Dismiss Under 11 U.S.C. §707(a)" Pending Appeal.  Debtors have appealed the bankruptcy court's decision to dismiss their Chapter 7 case to this Court.  Debtors also filed a motion to stay pending appeal with the bankruptcy court.  The bankruptcy court held a hearing on January 3, 2011, at which it denied Debtors' motion.  Debtors then appealed that decision to this Court by filing the instant motion on January 24, 2011.  The Court heard oral argument on February 16, 2011.  For the reasons stated below, the Court **DENIES** Debtors' motion to stay.

BACKGROUND

**I.  Factual Background.**

       Debtors, husband and wife, are self-employed physicians with Associated Physicians of Southeast Michigan, P.C..  After failed commercial real estate ventures in Florida, Debtors filed a

Chapter 7 bankruptcy petition on May 27, 2010. At the time of their bankruptcy petition, Debtors owed approximately $18,000,000 to various unsecured creditors. Prior to the bankruptcy petition, two creditors, Pacifica Loan Four, LLC ("Pacifica") and David R. Bartley, Sr. ("Bartley") (together, "Creditors"), obtained judgments against Debtors in Florida, in the amounts of $3,800,000 and $330,000, respectively. Pacifica filed a request for a writ of garnishment with the Oakland County Circuit Court, seeking to garnish funds from Debtors' business and financial accounts. Due to the bankruptcy stay, the Oakland County Circuit Court closed the state court case.

**II.    The Bankruptcy Court's Order to Dismiss Debtors' Chapter 7 Case.**

On September 28, 2010, Pacifica and Bartley filed Motions to Dismiss the Chapter 7 Case Pursuant to 11 U.S.C. § 707(a) (Bankruptcy Case No. 10-57577). On December 2, 2010, the Bankruptcy Court held an evidentiary hearing, at which the court heard testimony from Dr. Rahim regarding his financial matters and his efforts to repay his obligations.

The Bankruptcy Court issued a written opinion on December 16, 2010 (BK Opn., Doc. No. 7, Ex. C). In its opinion, the Bankruptcy Court made the following findings of fact:

Debtors disclosed a monthly income of $39,400 from their medical practice. *Id*. at 1. Debtors failed to disclose, on their schedule I, income imputed from three vehicles that the medical practice pays on behalf of Debtors. These payments include $1,226 per month for two 2010 Mercedes and a 2010 BMW. *Id*. The Bankruptcy Court found no evidence that these vehicles are used for business purposes. *Id.* at n. 2. Therefore, Debtors' true monthly income is at least $42,446, or $509,352 per year. *Id*. at 1-2. The Bankruptcy Court stated that Debtors' schedule I also did not include income that the Debtors regularly withdraw from their medical

practice in "substantial amounts." The Bankruptcy Court could not determine the amounts of these withdrawals from the "meager records" that Debtors produced at the evidentiary hearing. *Id*. at 2, n. 4.

The Debtors disclosed monthly expenses of $39,380 per month, leaving only $20 of monthly net income. *Id*. at 3. Debtors' monthly expenses include a $14,503 mortgage payment for their primary residence, $4,957 to maintain their vacation home in Florida, and $4,575 in education expenses for two children.[1] *Id*. at 2.

Debtors' disclosed $3,417,423 in secured debts on Debtors' three homes and a commercial building. Debtors also disclosed $6,671,939 in unsecured debts. *Id*. at 3.

The Bankruptcy Court granted Creditors' Motion to Dismiss under 11 U.S.C. § 707(a), holding that the debtors did not file their case in good faith. (BK Opn. at 10). Section 707(a), provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The Bankruptcy Court relied on *In re Zick*, 931 F.2d 1124, which held that § 707(a)(1)-(3)

---

[1] A detailed list of Debtors' expenses can be found in the Bankruptcy Court's Order Granting Creditors' Motion to Dismiss.

is not an exclusive list of circumstances in which a court could dismiss "for cause." The Court found that Debtors' continued lavish lifestyle, lack of effort to reduce expenses, ability to pay, and failure to make any payments toward their debts constituted bad faith. The Court also found that the Debtors had the ability to pay a "meaningful portion" of their debts through a Chapter 11 plan. *Id*. at 6. As a result, the Court determined that there was cause to dismiss Debtors' Chapter 7 claim.

**III.     The Bankruptcy Court's Order Denying Debtors' Motion to Stay Pending Appeal.**

On December 23, 2010, Debtors filed a Motion to Stay the Bankruptcy Court's Order Granting the Creditors' Motion to Dismiss. (Mtn. to Stay #1, Doc. No. 7, Ex. C). Debtors claimed that, in order for a Chapter 7 case to be dismissed under § 707(a), *In re Zick* requires not only excessive and continued expenditures on the part of the Debtor, but also some sort of wrongdoing, such as fraud or gross negligence. (Mtn. to Stay #1 at 4). Debtors also claimed that they will suffer irreparable injury if the Bankruptcy Court's order is not stayed because Creditors' will recommence collection efforts through garnishment, repossess assets to the detriment of the bankruptcy estate, and place liens on property. *Id*. at 5. In their brief, debtors stated that collection efforts by Creditors would cause their medical practice to fail and Debtors will be unable to pay "for even the most basic and essential living expenses." *Id*.

The Bankruptcy Court balanced four factors (discussed below) and held that Debtors' motion to stay should be denied.

## STANDARD OF REVIEW

"On appeal from a bankruptcy court, the district court assesses the findings of fact by the bankruptcy court on the 'clearly erroneous' standard but subjects the bankruptcy court's conclusions of law to *de novo* review." *In re Grand Traverse Dev. Co. Ltd. Part'p*, 151 B.R.

792, 795 (W.D. Mich. 1993).

In considering a motion to stay under Bankruptcy Rule 8005, the Court must weigh four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *see also In re Grand Traverse*, 151 B.R. at 796. These are not factors which must be conclusively established by the moving party; rather, they "should be balanced in light of the overall circumstances of the case." *In re Grand Traverse*, 151 B.R. at 796 (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

ANALYSIS

**I.     The Likelihood of Success on the Merits.**

In its motion to stay the Bankruptcy Court's order, Debtors make the same arguments before this Court as it did before the Bankruptcy Court. Debtors assert that a dismissal pursuant to § 707(a) requires wrongdoing on the part of the debtor, and also that the Bankruptcy Court improperly dismissed Debtors' Chapter 7 petition solely on Debtors' ability to pay. (Mtn. to Stay #2 at 5, Doc. No. 7). Debtors rely heavily on *In re Perlin*, 497 F.3d 364 (3rd Cir. 2007). In *Perlin*, the debtors' earned an annual income of $370,000 and maintained a lavish lifestyle. There was no evidence that the debtors misrepresented income, inflated their expenses, or filed misleading statements or schedules in an effort to defraud their creditors. In refusing to dismiss the debtor's Chapter 7 petition, the Third Circuit held that, while a Bankruptcy Court may consider a debtor's ability to pay under § 707(a), "a bankruptcy court's ultimate finding of bad

5

faith may not be based exclusively or primarily on a debtor's substantial financial means." *Id.* at 374.

The Bankruptcy Court declined to follow *Perlin*. Instead, the Bankruptcy Court relied on *Zick*, which stated:

> Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb 'substantial abuse,' Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor.
>
> ***
>
> The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide for an equitable distribution to creditors. The debtor herein, although he has minimal assets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis.

*In re Zick*, 931 F.2d at 1128 (quoting *In re Krohn*, 886 F.2d 123 (6th Cir. 1989).

The Court agrees with the Bankruptcy Court's determination that Debtors are unlikely to succeed on appeal. The Bankruptcy Court has not abused its discretion in determining that Debtors have filed in bad faith. Debtors claim to earn $39,400 per month, and claim to have $39,380 in expenses, leaving Debtors with a monthly net income of $20. Including their company-paid cars, Debtors' true monthly income is $42,446. Debtors live a very extravagant lifestyle (maintaining 3 homes, 3 luxury automobiles, and paying for expensive private school tuition for their children). Yet, Debtors have made no effort to decrease their expenditures, despite their so-called financial hardship. In fact, Debtors filed a notice of intent to reaffirm the debt obligations of the three homes that they own. A case such as this one, in which Debtors have yearly expenses of $509,112, is an egregious case.

Moreover, although the Bankruptcy Court declined to follow *Perlin* (a non-binding case

from the Third Circuit), its decision is not inconsistent with *Perlin*. The Court in *Perlin* stated, "[C]ourts should assess a debtor's good faith on an 'ad hoc basis,' considering the 'honest intention' of the debtor and 'whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law.' Moreover, we emphasized that the good-faith determination rests within the sound discretion of the bankruptcy court." *Perlin*, 497 F.3d at 372 (internal citations omitted). Although the Bankruptcy Court focused significantly on Debtors' ability to pay, it is clear in its order granting Creditors' motion to dismiss, that the Bankruptcy Court did not rely solely on Debtors ability to pay. Debtors failed to disclose $1,226 in imputed monthly income as a result of the payments made by Debtors' medical practice for Debtors' three luxury cars. Debtors also failed to disclose income necessary to fund payments of $1,000 per month to support a niece. Debtors also failed disclose income that they withdraw from their medical practice in "varying but significant amounts," which the Bankruptcy Court was unable to calculate because of the "meager" records that Debtors produced. (BK Opn at 2, n. 3). Furthermore, Debtors have not made any payments to Creditors. Instead, Debtors immediately filed for bankruptcy protection as soon as Creditors domesticated their judgments against Debtors.

  Therefore, while there is no evidence of fraud or negligence on the part of Debtors, there is some evidence of misconduct and evidence that Debtors have tried to avoid their large debts, without confronting any of the consequences.

  It is unlikely that Debtors will succeed on appeal, whether this Court follows *Zick*, which is binding precedent, or whether this Court follows *Perlin*, which is non-binding. This factor weighs against granting the stay.

**II.  The Likelihood that Debtors Will be Irreparably Harmed Absent a Stay.**

The Second factor that the Court must weigh is the likelihood that Debtors will be irreparably harmed if the Court denies its motion to stay. Debtors simply argue that they will be irreparably harmed because Creditors will recommence collection efforts and garnishment of their financial accounts. (Mtn. to Stay #2 at 10). Debtors claim that if Creditors execute garnishments against Debtors' medical practice, the practice will likely close, leaving Debtors with no source of income. *Id.*

The Sixth Circuit recognizes three factors in evaluating the potential harm that may occur absent a stay: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

> In evaluating the degree of injury, it is important to remember that [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id*. (emphasis in original).

In this case, Debtors allege only a monetary injury. Debtors' personal finances will likely be temporarily harmed if a stay is not granted, but they will not be *irreparably* harmed. If Debtors are successful on appeal, any money that has been garnished can be restored to the Debtor. Moreover, the likelihood of Debtors being harmed in the manner described in their briefs is slim. Debtors claim that they will be so financially harmed by Creditors' collection efforts that their medical practice will likely close and they will be unable to pay for essentials such as food, clothing, and utilities. Not only are these claims speculative, as the Bankruptcy

Court stated, they are also exaggerated. Debtors can easily "tighten their belts" in order to decrease their expenses. Despite Debtors' claims, the Bankruptcy Court was not off base in recommending that Debtors file a Chapter 11 bankruptcy petition. If Debtors fail on appeal, they may file a Chapter 11 petition in order to control the extent to which they are harmed by Creditors' collection efforts. Therefore, it is unlikely that the harm Debtors will face will be irreparable. Debtors have failed to provide evidence to the contrary. This factor weighs against granting the stay.

**III.     Harm to Others if the Stay is Granted.**

In their motion, Debtors fail to argue that Creditors will not be harmed if a stay is granted. Instead, Debtors argue that others will be harmed if the stay is not granted because a few aggressive creditors will diminish Debtors' estate to the detriment of all other creditors. This, however, is not a factor in the analysis. (Mtn. to Stay #2 at 11). Creditors claim that others will be harmed if a stay is granted because Creditors have been unable to collect on their judgment for almost a year. (Creditors' Resp. at 15).

This factor weighs slightly against granting a stay. The bankruptcy appeal hearing is set for April 28, 2011. Although Creditors would likely collect only a fraction of the total debt owed to them in the short time the stay would be effective, their right to that portion of the debt would still be prejudiced if a stay were granted.

**IV.     The Public Interest.**

Debtors claim that public policy concerns favor granting a stay of the Bankruptcy Court's order. (Mtn. to Stay #2 at 12). Debtors assert that the fundamental purposes of the Bankruptcy Code is to assist debtors in obtaining relief from their creditors and affording debtors a fresh

9

start. *Id*. Debtors claim that they simply cannot afford to repay their unsecured debt, citing that the interest on Pacfica's debt alone amounts to $300,000 per year. *Id*.

Creditors agree with the Bankruptcy Court's statements that this case "substantially challenged the integrity of the bankruptcy process, and that cannot be condoned." (Trans. of Dec. 16 Hearing at 13). Creditors also assert that a creditor should be permitted to collect on a valid state court judgment once a bankruptcy case has been dismissed.

The Court agrees with the Bankruptcy Court's statement that this case challenges the integrity of the bankruptcy process. Debtors have made no efforts to repay Creditors or reduce their expenses to a less than egregious amount. From the facts presented, it appears as though Debtors are simply using the bankruptcy system to maintain their lavish lifestyle and avoid creditors. Although Debtors' may show otherwise in their brief in support of their appeal, Debtors have not provided sufficient evidence to warrant granting their motion to stay.

**V.    Balancing the Factors.**

Having examined each of the four factors, the Court agrees with the Bankruptcy Court's decision and concludes that they do not weigh in favor of granting a stay pending Debtor's appeal.

### CONCLUSION

For the reasons discussed above, the Court **DENIES** Debtor's motion to stay pending appeal.

**IT IS SO ORDERED.**

                                            S/Sean F. Cox
                                            Sean F. Cox
                                            United States District Judge

Dated:  March 4, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:

Mahmoud R. Rahim and
Raya H. Abdulhussain,

    Debtors/Appellants.

Case No.: 10-15123

Honorable Sean F. Cox

_____/

**PROOF OF SERVICE**

    I hereby certify that a copy of the foregoing document was served upon counsel of record on March 4, 2011, by electronic and/or ordinary mail.

                                      S/Jennifer Hernandez
                                      Case Manager