UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                            Bankr. Case No.: 10-57577

Mahmoud R. Rahim and
Raya H. Abdulhussain,

      Debtors.
_____/

Mahmoud R. Rahim and
Raya H. Abdulhussain,                             Case No. 10-15123

      Appellants,                          Honorable Sean F. Cox
                                                  United States District Judge
v.

Pacifica Loan Four, LLC,
David R. Bartley, Sr., and
Bartley Realty Services,

      Appellees/Creditors.
_____/

<u>OPINION & ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT</u>

      Appellants Mahmoud Rahim and Raya Abdulhussain ("Appellants" or "Debtors") filed

this bankruptcy appeal on December 27, 2010. Appellants appeal the final ruling of Hon. Steven

W. Rhodes in Bankruptcy Case No. 10-57577, in which the bankruptcy court granted Creditors'

motion to dismiss Debtors' Chapter 7 case pursuant to 11 U.S.C. § 707(a). After the parties fully

briefed the issues, this Court issued an order pursuant to FED. R. BANKR. P. 8012, finding that

the decisional process would not be significantly aided by oral argument. The parties were given

an opportunity to file a response demonstrating why this Court should not decide the case on the

briefs and the record. Neither party objected to the Court's order and this Court declines to hear

oral argument on the matter.  For the reasons that follow, the Court **AFFIRMS** the holding of the bankruptcy court.

## BACKGROUND

Appellants, husband and wife, are self-employed physicians with Associated Physicians of Southeast Michigan, P.C..  Appellants invested heavily into commercial real estate ventures in Florida.  These investments eventually failed and left Appellants owing millions to creditors. Two creditors, Pacifica Loan Four, LLC ("Pacifica") and David R. Bartley, Sr. ("Bartley") (together, "Appellees"), obtained judgments against Appellants in Florida state court, in the amounts of $3,800,000 and $330,000, respectively.  Appellees subsequently domesticated their judgments in Oakland County Circuit Court and commenced collection efforts.  After failing to negotiate settlements, Appellants filed a Chapter 7 bankruptcy petition on May 27, 2010.  At the time of their bankruptcy petition, Appellants owed over $10 million to various secured and unsecured creditors.  (Dbts. Desig. 2 at 1).

On September 28, 2010, Appellees filed Motions to Dismiss the Chapter 7 Case Pursuant to 11 U.S.C. § 707(a) (Dbts. Desig. 5 & 6).  On December 2, 2010, the bankruptcy court held an evidentiary hearing at which the court heard testimony from Dr. Rahim regarding his financial matters and his efforts to repay his obligations.

The bankruptcy court issued a written opinion on December 16, 2010 (BK Opn., Dbts. Desig. # 15).  The bankruptcy court made the following findings of fact:

Appellants disclosed a monthly income of $39,400 from their medical practice.  *Id*. at 1. Appellants failed to disclose, on their Schedule I, income imputed from three luxury vehicles that the medical practice pays on behalf of Appellants.  These payments include $2,026 a month

2

for two 2010 Mercedes and a 2010 BMW.  *Id.*  The bankruptcy court found no evidence that these vehicles are used for business purposes.  *Id.* at n. 2.  Including the monthly income imputed from the use of these vehicles, Appellants' true monthly income is at least $41,426 a month ($497,112 a year).  The bankruptcy court stated that Appellants' Schedule I also did not include income that the Debtors regularly withdraw from their medical practice in "substantial amounts." *Id.*  The bankruptcy court could not determine the amounts of these withdrawals from the "meager records" that Debtors produced at the evidentiary hearing.  *Id.* at 2, n. 4.

The Debtors disclosed monthly expenses of $39,380 a month, leaving only $20 of monthly net income.  *Id.* at 3.  Debtors' monthly expenses include a $14,503 mortgage payment for their primary residence, $4,957 to maintain their vacation home in Florida, and $4,575 in education expenses for two children.[1]  *Id.* at 2.  Despite claiming a monthly net income of only $20 per month, Appellants were able to make a $29,000 down payment on their 2010 BMW a couple months prior to filing for Chapter 7 bankruptcy.  (Dbts. Desig. #14 at 48).

Debtors' disclosed $3,417,423 in secured debts on Debtors' three homes and a commercial building.  Debtors also disclosed $6,671,939 in unsecured debts.  (BK Opn. at 3).

The bankruptcy court granted Creditors' motion to dismiss under 11 U.S.C. § 707(a), holding that Debtors did not file their case in good faith.  *Id.* at 10.  The court found that Debtors' continued lavish lifestyle, lack of effort to reduce expenses, ability to pay, and failure to make any payments toward their debts constituted bad faith.  The bankruptcy court also found that Debtors had the ability to pay a "meaningful portion" of their debts through a Chapter 11

---

[1] A detailed list of Debtors' expenses can be found in the Bankruptcy Court's Order Granting Creditors' Motion to Dismiss.

3

plan, or otherwise. *Id*. at 6. As a result, the bankruptcy court determined that there was cause to dismiss Debtors' Chapter 7 case.

On December 23, 2010, Debtors filed a Motion to Stay the Bankruptcy Court's Order Granting the Creditors' Motion to Dismiss. (Crds. Desig. # 16). The bankruptcy court denied Debtors' motion to stay pending appeal. (Crds. Desig. # 21). On December 27, 20101, Debtors filed a notice of appeal. (Doc. No. 1). On January 24, 2011, the Debtors filed a similar motion to stay with this Court. (Doc. No. 7). This Court denied Debtors' motion to stay the bankruptcy court's order and issued an Opinion and Order to that affect on March 16, 2011. (Doc. No. 19).

Appellants filed their brief on February 21, 2011 (Dbts. Br., Doc. No. 21). Appellees filed their brief on March 16, 2011 (Crds. Br., Doc. No. 20). Appellants filed a reply brief on April 8, 2011 (Dbts. Reply, Doc. No. 21).

On March 3, 2011, the United States filed an *amicus curiae* brief supporting affirmance of the bankruptcy court's decision (Gov.'s Br., Doc. No. 18).

## STANDARD OF REVIEW

In reviewing cases on appeal from the bankruptcy court, this Court reviews the bankruptcy court's findings of fact under a clear error standard. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997). A factual finding is clearly erroneous when "the reviewing court is left with a definite and firm conviction that a mistake has been committed." *United States v. Aven*, 997 F.2d 1150, 1152 (6th Cir. 1993). The Court reviews the bankruptcy court's conclusions of law under a *de novo* standard. *In re Baker & Getty*, 106 F.3d at 1259. "A bankruptcy court decision to dismiss pursuant to 11 U.S.C. § 707(a) will be reversed only for abuse of discretion." *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991). Finally,

4

as with all evidentiary rulings made by a federal court, the bankruptcy court's rulings on

evidentiary issues are reviewed for an abuse of discretion.  *See Hill v. Marshall*, 962 F.2d 1209,

1214 (6th Cir. 1992).

ANALYSIS

On appeal, Appellants assert that the bankruptcy court erred when: (1) it held Appellants

filed their Chapter 7 case in bad faith and there was cause to dismiss the case under 11 U.S.C. §

707(a); and (2) it applied standards set forth in 11 U.S.C. § 707(b) because Appellants' debts are

mostly non-consumer debts.

I.      The Bankruptcy Court Did Not Abuse Its Discretion When It Dismissed Appellants'
        Chapter 7 Case Under 11 U.S.C. § 707(a).

The Bankruptcy Court dismissed Appellants' Chapter 7 case "for cause" under 11 U.S.C.

§ 707(a), which provides:

> (a) The court may dismiss a case under this chapter only after notice
> and a hearing and *only for cause*, including--
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of
> title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days
> or such additional time as the court may allow after the filing of the
> petition commencing such case, the information required by
> paragraph (1) of section 521(a), but only on a motion by the United
> States trustee.

11 U.S.C. § 707(a) (emphasis added).

In making its decision, the bankruptcy court relied heavily on *In re Zick* and its

interpretation of *In re Krohn*, 886 F.2d 123 (6th Cir. 1989).  In *Khron*, the Sixth Circuit affirmed

a bankruptcy court's dismissal of a debtor's consumer-debt-based Chapter 7 petition under §

5

707(b).  The Court stated a that a debtor's "ability to repay his debts out of future earnings. . .

alone may be sufficient to warrant dismissal" for substantial abuse.  *Id*. at 126.

      Two years later, in *Zick*, the Sixth Circuit applied its reasoning in *Khron* to § 707(a) and

a case involving non-consumer debt.  The court in *Zick* stated that § 707(a)(1)-(3) is not an

exclusive list of circumstances for which a court can dismiss a Chapter 7 case "for cause," and

that "lack of good faith is a basis for dismissal under § 707(a)."  *Zick*, 931 F.2d at 1127.  The

court in *Zick* further stated:

> Those courts which have reviewed the legislative history, have
> generally concluded that, in seeking to curb 'substantial abuse,'
> Congress meant to deny Chapter 7 relief to the dishonest or
> non-needy debtor.
> 
>                               \*\*\*
> 
> The goals of bankruptcy are to provide an honest debtor with a fresh
> start and to provide for an equitable distribution to creditors.  The
> debtor herein, although he has minimal assets, appears to be seeking
> a "head start" with no attempt to deal with creditors on an equitable
> basis.

*Id.* at 1128 (quoting *Krohn*, 886 F.2d at 127-28).  The Court concluded:

> The Bankruptcy Code is intended to serve those persons who, despite
> their best efforts, find themselves hopelessly adrift in a sea of debt.
> Bankruptcy protection was not intended to assist those who, despite
> their own misconduct, are attempting to preserve a comfortable
> standard of living at the expense of their creditors.  Good faith and
> candor are necessary prerequisites to obtaining a fresh start.  The
> bankruptcy laws are grounded on the fresh start concept.  There is no
> right, however, to a head start.

*Id*. at 1129-30 (*quoting In Re Jones, Debtor*, 114 B.R. 917, 924 (Bankr.N.D.Ohio 1990))

(internal citations omitted).

      In this case, the bankruptcy court found that Appellants are not "hopelessly adrift in a sea

of debt" and that Appellants' case is truly an "egregious" one.  (BK Opn. at 5).  Taken together,

the bankruptcy court determined that *Zick* and *Krohn* allow for the conclusion that Appellants'
continued lavish lifestyle, lack of effort to reduce expenses, ability to pay, and failure to make
any payments toward their debts constituted bad faith.  This court agrees.

    A.    <u>The Bankruptcy Court Considered The Totality Of The Circumstances</u>.

Appellants first contend that the Bankruptcy Court failed to consider the totality of the
circumstances, which, if viewed in their entirety, show that Appellants are indeed "honest but
unfortunate debtors."  (Crds. Br. at 11).  The factors that Appellants allege the Bankruptcy Court
failed to consider include:

- The extend of Appellants' total debt;
- Amount of yearly interest on debt;
- The fact that Appellants did not profit on their failed real estate investments;
- The vehicles not disclosed in their schedules are owned by Appellants' Medical Clinic;
- The fact that Appellants ceased making $1,000 payments to their niece for living expenses each month;
- The age and health of Appellants; and
- The fact that Appellants have at least $200,000 in assets available for liquidation to pay unsecured creditors.

*Id*. at 11.

The Court finds that the bankruptcy court sufficiently considered the totality of the
circumstances when it determined that Appellants did not file their Chapter 7 petition in good
faith.  Appellants' contentions are without merit.  Although the bankruptcy court did not
explicitly state the amount of Appellants' annual interest and assets available for liquidation, it
went into a detailed discussion of how Appellants could pay a meaningful portion of their debt
each year by simply "tightening their belts" or alternatively, committing to a Chapter 11 plan.
(BK Opn. at 5).  It is clear that the bankruptcy court understood the extent of Appellants' debt
and assets when it found that Appellants could potentially pay their creditors up to $1,800,000

over 5 years through a Chapter 11 plan by simply reducing their expenses to a modest $150,000 per year.[2]  Additionally, the bankruptcy court found that, to date, Appellants have not made any payments to Appellees.

As discussed above, the bankruptcy court also addressed the fact that Appellants failed to disclose income imputed from three luxury vehicles owned by Appellants' medical practice.  *Id.* at 1.  The bankruptcy court found that there was no evidence that these vehicles are used for business purposes and that Appellants' income should have reflected the value imputed from these vehicles.

The bankruptcy court also explicitly factored Appellants' health in its decision, but found that any impact on Appellants' future income was uncorroborated and Mr. Rahim's testimony on the matter lacked credibility.  *Id.* at 1, n. 1.

Finally, the fact that Appellants did not profit from their failed real estate investments is irrelevant to Appellants' current income, expenses, disclosures, and ability to pay.  Furthermore, although Appellants did not obtain their loans fraudulently, they have engaged in other egregious conduct sufficient to constitute bad faith.

Based on the record provided, the bankruptcy court's findings of fact are not clearly erroneous.  The bankruptcy court considered the totality of the circumstances when it found that Appellants filed their Chapter 7 petition in bad faith.

B.    The Bankruptcy Court Did Not Rely Solely On Appellants' Ability To Pay.

Alternatively, Appellants contend that a dismissal pursuant to § 707(a) requires

---

[2] Contrary to Appellants position, an annual dividend to Appellants' unsecured creditors of up to $1,800,000 is considerably less prejudicial to the unsecured creditors than a one-time dividend of $200,000 from the liquidation of Appellants' assets.

wrongdoing on the part of the debtor and that the bankruptcy court improperly dismissed

Appellants' Chapter 7 petition solely on Appellants' ability to pay.  (Crds. Br. at 12).  In making

this assertion   Appellants rely on the following statement by the Sixth Circuit in *Zick*:

> Dismissal based on lack of good faith must be undertaken on an *ad hoc* basis.  It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, *and* intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Zick*, 931 F.2d at 1128 (emphasis added) (internal citations omitted).

In support of their contention, Appellants cite *In re Mohr*, 425 B.R. 457

(Bkrtcy.S.D.Ohio 2010).  *In Mohr*, the court denied the United States Trustee's ("UST") motion

to dismiss the debtors' Chapter 7 case for bad faith under § 707(a).  *Id*. at 467.  The UST argued

that, because the debtors had a disposable income of between $2,000 and $2,400 per month, they

possessed the ability to pay a significant portion of their debts.  *Id*.  The court held, "Following

*Zick* and *Merritt*, the court concludes that the Debtors' ability to pay is a factor to consider, but

does not support dismissal under § 707(a) in this case because there is no other indicia of bad

faith and certainly no evidence of egregious conduct."  *Id.*

The bankruptcy court's decision in this case is not inconsistent with *Mohr*.  Unlike in

*Mohr*, where the debtors' income and expenses were not indicia of bad faith, the extent of

Appellants' income and expenses in this case is clearly indicative of egregious conduct.

Additionally, a bankruptcy court may consider of a number of factors when exercising its

discretion to dismiss under § 707(a) for lack of good faith.[3]  *See Zick*, 931 F.2d at 1128; *In re*

---

[3] The court in *In re Spagnolia* compiled the following, non-exhaustive list of factors that courts have considered:

9

*Spagnolia,* 199 B.R. 362, 364 (Bankr.W.D. Ky. 1995); *In re Merritt*, 2000 WL 420681 at *4 (6th

Cir. 200).  Although the bankruptcy court focused on Appellants' ability to pay, it considered a

number of other factors which supported a finding of bad faith.[4]

   As stated above, the bankruptcy court found that Appellants made no effort to reduce

their expenses or "tighten their belts." (B.K. Opn. at 5).  The bankruptcy court found that

Appellants' $42,426 in monthly expenses emphasizes the egregiousness of Appellants' abuse of

chapter 7 relief.

   The bankruptcy court also considered the unfairness of permitting Chapter 7 relief in this

---

   1. The debtor reduced his creditors to a single creditor in the months prior to filing the
   petition.
   2. The debtor failed to make lifestyle adjustments or continued living an expansive or
   lavish lifestyle.
   3. The debtor filed the case in response to a judgment pending litigation, or collection
   action; there is an intent to avoid a large single debt.
   4. The debtor made no effort to repay his debts.
   5. The unfairness of the use of Chapter 7.
   6. The debtor has sufficient resources to pay his debts.
   7. The debtor is paying debts to insiders.
   8. The schedules inflate expenses to disguise financial well-being.
   9. The debtor transferred assets.
   10. The debtor is over-utilizing the protection of the Code to the unconscionable
   detriment of creditors.
   11. The debtor employed a deliberate and persistent pattern of evading a single major
   creditor.
   12. The debtor failed to make candid and full disclosure.
   13. The debts are modest in relation to assets and income.
   14. There are multiple bankruptcy filings or other procedural 'gymnastics.'

*In re Spagnolia*, 199 B.R. 362, 364 (Bankr.W.D. Ky. 1995)

   [4] Appellants also cite *In re Perlin*, 497 F.3d 364 (3rd Cir. 2007), in support of their theory
that a bankruptcy court's dismissal under § 707(a) cannot be based solely on a debtor's ability to
pay.  This case is not inconsistent with *Perlin* for the same reasons that it is not inconsistent with
*Mohr.*  The Bankruptcy Court considered a number of factors in making its determination.

circumstance.  The court explicitly stated that granting bankruptcy relief to Appellants would be unfair to others who have been closely scrutinized for their expenses and "compelled to make difficult choices about their expenses as a condition of bankruptcy relief."  *Id.*

Moreover, the court considered Appellants' failure to make a full and honest disclosure of income.  Again, Appellants failed to disclose $2,026 per month in income imputed from the use of their luxury vehicles and additional income that Appellants withdraw from their medical practice in "varying but significant amounts."  *Id*. at 2, n. 3.

Thus, despite its emphasis on the Appellants' ability to pay, the record shows that the bankruptcy court considered a number of factors in making its determination that Appellants Chapter 7 case should be dismissed under § 707(a).  While there is no evidence of fraud or negligence on the part of Appellants, there is indicia of bad faith and certainly evidence of egregious conduct.  Appellants in this case are merely attempting to preserve their comfortable standard of living at the expense of their creditors.  Appellants have failed to establish the requisite good faith necessary for a court to grant relief under Chapter 7 of the bankruptcy code. The bankruptcy court did not abuse its discretion when it dismissed Appellants' Chapter 7 case for bad faith under § 707(a).

II.    The Bankruptcy Court Did Not Exclusively Use Standards Set Forth In 11 U.S.C. § 707(b) To Dismiss Appellants' Chapter 7 Case.

Next, Appellants contend that the bankruptcy court erred by applying standards set forth in § 707(b) when it concluded that a debtors' continuing lavish lifestyle would support a finding of bad faith.  (Dbts. Br. at 20).  Section 707(b) provides that a court may dismiss a case filed by a debtor, whose debts are primarily consumer debts, if it finds that granting Chapter 7 relief would constitute substantial abuse of bankruptcy protection.  *See* 11 U.S.C. § 707(b).  Substantial abuse

11

is determined upon the totality of the circumstances and can be based upon lack of honesty or need. *Krohn*, 886 F.2d at 126. Section 707(b) requires an income-and-expense test to determine "substantial abuse." Appellants assert that the bankruptcy court ignored the distinction between consumer debts and non-consumer debts when it relied on *Zick*'s application of *Krohn*'s § 707(b) "substantial abuse" analysis to § 707(a) cases. (Dbts. Br. at 20). Appellants contend that dismissing their Chapter 7 case solely on their ability to pay is contrary to Congress's intent to limit the § 707(b) analysis to consumer debts.

The § 707(b) income-and-expense analysis creates a presumption of substantial abuse in cases involving consumer debts if the debtor's income is greater than a relative threshold amount. *See* 11 U.S.C § 707(b)(1)(2)(A). Appellants do not address how Congress's intent to create such a presumption in consumer debt cases is hindered by consideration of a debtor's ability to pay in non-consumer debt cases. Nothing in § 707(a) prohibits a similar inquiry into a debtor's income and expenses. A debtor's ability to pay is an appropriate factor to consider when determining whether a debtor lacks good faith in applying for Chapter 7 relief of its non-consumer debts. *Perlin*, 497 F.3d at 371. Section 707(a) is not an exhaustive list of "for cause" reasons to dismiss a Chapter 7 case. *Zick*, 931 F.2d at 1126.

As discussed above, although the bankruptcy court concluded that a debtors' continuing lavish lifestyle would support a finding of bad faith, it is clear that the bankruptcy court considered the totality of the circumstances in making its determination. Thus, contrary to Appellants' contentions, the Bankruptcy Court did not exclusively utilize § 707(b) standards in dismissing Appellants' Chapter 7 case involving mostly non-consumer debt.

CONCLUSION

12

For the reasons stated above, the Court **AFFIRMS** the decision of the bankruptcy court.

**IT IS SO ORDERED**.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 23, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 23, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager